IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 18-cr-00328-PAB-12

UNITED STATES OF AMERICA,

    Plaintiff,

v.

12.    LOVEY CAMPANELLA,

    Defendant.

___

**ORDER**
___

This matter is before the Court on defendant Lovey Campanella's Motion for compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) [Docket No. 517]. The government has filed a response opposing the motion. Docket No. 519. Ms. Campanella has filed two replies, a supplement, and a supplemental motion for ruling on the motion. Docket Nos. 520, 521, 522, 523.

**I.    BACKGROUND**

On July 25, 2019, Ms. Campanella pled guilty to one count of conspiracy to distribute or possess with the intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine. Docket No. 271; Docket No. 399 (judgment). On October 18, 2019, the Court sentenced Ms. Campanella to, *inter alia*, 34 months imprisonment followed by three years of supervised release. Docket No. 397. Ms. Campanella is currently incarcerated at FMC Carswell in Fort Worth, Texas.

*See* Federal Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/. Her projected release date is December 23, 2021, approximately 16 months from now. *Id*.

On June 5, 2020, Ms. Campanella filed the instant motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Docket No. 517.[1] Ms. Campanella represents that her body mass index – 45.52 – qualifies as "severely obese," which means that she is at higher risk of mortality from COVID-19.[2] *Id*. at 3. Ms. Campanella also represents that COVID-19 is spreading within FMC Carswell. Docket No. 522. On these bases, Ms. Campanella requests that the Court grant her compassionate release from the remainder of her prison sentence and modify her term of imprisonment to time served. Docket No. 517 at 13.

According to the BOP website, as of August 13, 2020, there are currently fifteen inmates and two staff members at FMC Carswell who are positive for COVID-19. *See* Federal Bureau of Prisons*, COVID-19 Cases*, https://www.bop.gov/coronavirus/. Five hundred and twenty-nine inmates and one staff member have recovered from COVID-19. *Id*. Four inmates have died. *Id*.

---

[1] The Court denied without prejudice an earlier motion for compassionate release for failure to exhaust administrative remedies. *See* Docket No. 500.

[2] COVID-19 is an infectious disease caused by a novel coronavirus. See "Q&A on coronaviruses (COVID-19)," World Health Organization, Apr. 17, 2020, https://www.who.int/news-room/q-a-detail/q-a-coronaviruses. COVID-19 became a pandemic in the early months of 2020 and continues to spread around the world and within the United States.

## II. ANALYSIS

"Under § 3582(c)(1)(A)(i)," known as the "compassionate release provision," "a district court may grant a sentence reduction if, after considering the 18 U.S.C. § 3553(a) sentencing factors, it finds that 'extraordinary and compelling reasons warrant such a reduction' and the 'reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (unpublished) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  A district court may grant a sentence reduction upon motion of the defendant only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).  That requirement is satisfied here.  Ms. Campanella states that she submitted a request to the warden at FMC Carswell on April 1, 2020.  Docket No. 517 at 2.  More than thirty days have passed since the request was submitted, and the government does not contend that the Court lacks jurisdiction to consider the motion.  Accordingly, the Court has jurisdiction to consider the motion.

### A.   Extraordinary and Compelling Reasons

The Sentencing Commission has identified four categories of extraordinary and compelling reasons that may warrant a sentence reduction: (A) medical condition of the defendant; (B) age of the defendant; (C) family circumstances; and (D) other reasons. *See* U.S.S.G. § 1B1.13, cmt. n.1.  Ms. Campanella's motion does not specify which category her motion falls into, although she appears to concede that it does not fall

within subsections (A) through (C). Docket No. 517 at 7. Instead, Ms. Campanella argues that her morbid obesity, combined with the COVID-19 pandemic, warrants the reduction of her sentence to time served. *Id*. Thus, the Court will construe the motion as arising under subsection D of the policy statement.[3]

Subsection D allows for release pursuant to extraordinary or compelling reasons, other than those set out in subsections (A)-(C), "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13, cmt. n.1(D). "[T]he BOP has issued Program Statement 5050.50 (2019), which lists factors which the BOP uses in determining whether extraordinary and compelling reasons exist for compassionate release." *United States v. Turns*, 2020 WL 2519710, at *3 (S.D. Ohio May 18, 2020). "BOP Program Statement 5050.50 identifies several nonexclusive factors to determine whether 'other' extraordinary and compelling reasons exist: the defendant's criminal and personal history, nature of the offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'" *Saldana*, 807 F. App'x at 819 (quoting BOP Program Statement 5050.50 at 12 (2019)).

---

[3] To the extent that Ms. Campanella argues that U.S.S.G. § 1B1.13 is not binding on the Court, the Court disagrees. "The First Step Act did not change the substantive standards governing compassionate release. A proposed sentence reduction still must be supported by: (1) extraordinary and compelling reasons; (2) *applicable policy statements issued by the Sentencing Commission*; and (3) the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Edington*, No. 19-cr-00174-REB-1, 2020 WL 2744140, at *2 (D. Colo. May 27, 2020) (quotation and alteration marks omitted) (emphasis added). "If the policy statement needs tweaking in light of [the First Step Act], that tweaking must be accomplished by the [Sentencing] Commission, not by the courts." *United States v. Lynn*, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 12, 2019).

4

Ms. Campanella does not specifically argue that these subsection D factors weigh in favor of compassionate release, but instead argues that her health issues, combined with the COVID-19 pandemic, constitute extraordinary and compelling reasons for compassionate release. *See* Docket No. 517. However, because the list of factors set out in Program Statement 5050.50 is nonexclusive, the Court will consider whether Ms. Campanella has met her burden "to prove that her medical conditions create extraordinary and compelling reasons warranting a sentence reduction." *United States v. Edington*, No. 19-cr-00174-REB-1, 2020 WL 2744140, at *4 (D. Colo. May 27, 2020).

"The existence of the COVID-19 pandemic no doubt can be described as 'extraordinary' insofar as it is '[b]eyond what is usual, customary, regular, or common.'" *Id.* at *3 (quoting *United States v. Rodriguez*, 2020 WL 1627331 at *7 (E.D. Pa. April 1, 2020)). "However, because the apposite test is stated in the conjunctive, the dangers presented by the pandemic – which impact us all, worldwide – also must be 'compelling' in [the movant's] particular circumstances." *Id.*; *see also United States v. Bolze*, 2020 WL 2521273, at *7 (E.D. Tenn. May 13, 2020) ("[T]he COVID-19 pandemic cannot present an extraordinary and compelling reason alone because the policy statement directs courts to consider individual reasons for compassionate release, not general threats to the prison population.").[4]

---

[4] Accordingly, while the number of active COVID-19 cases at FMC Carswell is disturbing, the number of COVID-19 cases at the facility cannot itself warrant release where the inmate otherwise fails to demonstrate her entitlement to compassionate release.

Ms. Campanella represents that she is severely obese, standing five foot three inches tall and weighing 257 pounds. Docket No. 517 at 3. The Centers for Disease Control and Prevention ("CDC") has indicated that individuals with obesity, defined as a body mass index of 30 or higher, are at increased risk of developing severe illness from COVID-19. *See* Centers for Disease Control and Prevention, *People Who Are At Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/ need-extra-precautions/people-at-increased-risk.html (last accessed August 6, 2020); *see also United States v. Jenkins*, No. 99-cr-00439-JLK-1, 2020 WL 2466911, at *7 (D. Colo. May 8, 2020) (discussing research showing that "the severity of COVID-19 illness increases with body mass index"). The government, while apparently not disputing Ms. Campanella's medical condition, argues that she is otherwise in good health and that her obesity is not a "compelling reason" warranting release. Docket No. 519 at 7. The presentence report indicates that Ms. Campanella has "struggled with obesity" and has gastrointestinal complaints, but is otherwise "in good health." Docket No. 361 at 16. Ms. Campanella has provided no medical records to support her motion.

While some courts have concluded that morbid obesity is an extraordinary and compelling reason justifying release during the COVID-19 pandemic, others have not. *Compare, e.g., United States v. Jackson*, 2020 WL 3396901, at *6 (N.D. Ind. June 19, 2020) (granting release for 31-year old inmate with BMI of 47, high blood pressure, and history of respiratory illness), *and United States v. Hayes*, 2020 WL 4001903, at *3 (E.D. Mich. July 15, 2020) (noting that "obesity alone qualifies as a recognized risk factor" and granting release), *with United States v. Pride*, No. 16-cr-076-WJM, 2020 WL

3971652, at *2 (D. Colo. July 14, 2020) (denying release for 37-year old inmate with obesity and hypertension), *and United States v. Lindquist*, 2020 WL 351505, at *3 (E.D. Tex. June 26, 2020) (denying release for morbidly obese inmate because her condition does not "substantially diminish her ability to provide self-care"). For an individual like Ms. Campanella, who is young and has no documented health issues or risk factors other than morbid obesity, it is a close call.

The Court concludes that Ms. Campanella has demonstrated a compelling reason justifying release for three reasons. First, the medical evidence is relatively clear that morbid obesity is one of the strongest risk factors for more severe illness from COVID-19. In *Jenkins*, Senior Judge John L. Kane identified research indicating that "the severity of COVID-19 illness increases with body mass index" and that obesity is the "chronic condition with the strongest association with critical illness" from COVID-19. *See* 2020 WL 2466911 at *7. The government offers no evidence pointing the other way. With a body mass index of 45.52, Ms. Campanella is in the category of individuals most at high risk should she contract COVID-19. Second, the Court cannot ignore the background conditions at FMC Carswell, where over five hundred cases of COVID-19 have been identified and fifteen inmates are currently positive for the virus. While the Bureau of Prisons is taking extensive precautions to prevent the spread of COVID-19, those precautions have not worked as well at FMC Carswell.[5] Against this backdrop, Ms. Campanella's morbid obesity stands out as a compelling reason

---

[5] The government dismisses concerns over the spread of COVID-19 at FMC Carswell as "hypothetical" and "speculative" – presumably in a filing submitted before over five hundred individuals contracted COVID-19 at FMC Carswell.

warranting her release. Finally, the compassionate release factors under subsection D – the defendant's criminal and personal history, nature of her offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans, and whether release would minimize the severity of the offense – weigh in favor of release. *Saldana*, 807 F. App'x at 818. While the crime that sent Ms. Campanella to prison was serious, she has only one previous conviction, and the Court concluded at sentencing that her criminal history category was I. Docket No. 400. And, for reasons the Court will discuss later, the Court is not persuaded that reducing Ms. Campanella's sentence to time served would minimize the seriousness of her offenses. Thus, the Court concludes that extraordinary and compelling reasons exist to grant Ms. Campanella compassionate release.

### B.  Section § 3553(a) Factors

Ms. Campanella has shown that extraordinary and compelling reasons exist to reduce her sentence. The question remaining is what, if any, amount of reduction is appropriate, which the Court must consider in light of the sentencing factors outlined in 18 U.S.C. § 3553(a). Ms. Campanella requests that her sentence be reduced to time served. Docket No. 517. The government makes no argument as to the § 3553(a) factors. *See* Docket No. 519.

Section 3582(c)(1)(A) allows the Court to, if it grants a motion for a sentence reduction, "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." With that in mind, *United States v. Lopez* is instructive. 2020 WL 2489746, at *3 (D.N.M.

May 14, 2020). In *Lopez*, the court initially sentenced the defendant to 36 months' imprisonment for distribution of oxycodone and fentanyl. *Id*. at *1. Defendant, a 62-year-old man with high blood pressure and type II diabetes, moved for compassionate release as a result of the COVID-19 pandemic with approximately ten months remaining in his sentence. *Id*. at *3. The court concluded that the defendant's age and health conditions, combined with the spread of COVID-19, qualified as an "extraordinary and compelling reason[]" for compassionate release. *Id*. at *4. In light of the severity of the defendant's offense and his criminal history category of V, the court placed the defendant on home confinement as a condition of supervised release for what would have been the remainder of his prison sentence, a sentence it concluded was supported by the sentencing factors. *Id*.; *see also United States v. Al-Jumail*, 2020 WL 2395224, at *8 (E.D. Mich. May 12, 2020) (reducing defendant's term of imprisonment to time served and imposing an additional term of supervised release to be served under home confinement).[6]

---

[6] Some district courts have concluded that they lack statutory authority to place an inmate in home confinement. *See, e.g.*, *United States v. Garza*, 2020 WL 1485782 (S.D. Cal. Mar. 27, 2020) (citing *United States v. Ceballos*, 671 F.3d 852 (9th Cir. 2011)); *United States v. Brown*, 2020 WL 1479129 (D. Md. Mar. 26, 2020) (noting that the court may only modify a sentence in certain circumstances). While it is true that the Bureau of Prisons "has the statutory authority to choose the location where prisoners serve their sentences" once a sentence has been imposed, the Court "has wide discretion in determining the length and type of sentence." *Ceballos*, 671 F.3d at 855; *see also* 18 U.S.C. § 3621(b). Accordingly, while a court may not direct the Bureau of Prisons to place a prisoner in a particular institution, this logic does not apply where a court determines that a sentence reduction is appropriate pursuant to § 3582(c)(1)(A), which is akin to the Court "determining the length and type of sentence." This is supported by the text of the compassionate release statute, which contemplates the sentencing court "impos[ing] a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." *See* 18 U.S.C. § 3582(c)(1)(A). Thus, there is statutory authorization

9

The Court finds that reducing Ms. Campanella's sentence to time served, but extending the period of supervised release and ordering that Ms. Campanella serve the time remaining in her sentence in home detention, is appropriate in light of the sentencing factors.  Ms. Campanella committed a serious crime.  The stipulated facts in her plea agreement indicate that Ms. Campanella served as a drug courier between the United States and Mexico as part of a large-scale drug distribution conspiracy.  *See* Docket No. 273 at 8-9.  The Court's 34-month sentence for Ms. Campanella already represents a downward departure of twelve months from the determined guideline range of 46 to 57 months' incarceration.  *See* Docket No. 400 (statement of reasons).  However, the Court must balance this need for just punishment against the risk that COVID-19 poses to Ms. Campanella's health, given her serious underlying health condition and the spread of COVID-19 within FMC Carswell.  The Court is not persuaded that ordering Ms. Campanella to remain in prison is appropriate when there are extraordinary and compelling reasons to release her from prison and the option of home detention while on supervised release is available.

The Court believes that sentencing Ms. Campanella to serve the remainder of her prison sentence on home confinement "will continue to impose just punishment for [her] offense[] by restricting [her] liberty while also reducing the risk to [her] health posed by COVID-19."  *See Lopez*, 2020 WL 2489746, at *4.  Accordingly, the Court will extend Ms. Campanella's term of supervised release, which was initially three years, to 52 months, with the first sixteen months to be served in home detention as a special

---

for a court, on a motion for compassionate release, to sentence a defendant to a period of supervised release with the condition of home confinement.

condition of Ms. Campanella's supervised release. *See* Docket No. 399. Such sentence is sufficient but not greater than necessary to accomplish the goals of sentencing established by 18 U.S.C § 3553(a). Finally, the Court finds that releasing Ms. Campanella to home confinement presents no danger to the safety of any other person or to the community. *See* U.S.S.G. § 1B1.13(2).

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant Lovey Campanella's Motion for compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) [Docket No. 517] is **GRANTED IN PART**. It is further

**ORDERED** that the defendant's previously imposed sentence of incarceration is reduced to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). It is further

**ORDERED** that this order is stayed for up to fourteen days, for the verification of the defendant's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure the defendant's safe release. The defendant shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. If more than fourteen days are needed to make appropriate travel arrangements and ensure the defendant's safe release, the parties shall notify the court. It is further

**ORDERED** that the defendant must provide the complete address where the defendant will reside upon release to the probation office in the district where she will

be released because it was not included in the motion for sentence reduction.  It is further

**ORDERED** that, pursuant to 18 U.S.C. § 3582(c)(1)(A), the defendant is ordered to serve a "special term" of supervised release of 16 months.  The conditions of the "special term" of supervision are

(1) The defendant will be monitored by location monitoring technology as determined by the probation officer for a period of 16 months.  Ms. Campanella must abide by all technology requirements and follow the rules and regulations of the location monitoring program.  She must pay the costs of the program based on her ability to pay.  Location monitoring technology will be used to monitor her movement in the community as well as other court-imposed conditions of release: she is restricted to her residence at all times; except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the officer; and

(2) all other previously imposed conditions of supervised release, as set out in the Judgment [Docket No. 399] entered on October 21, 2019.

It is further

**ORDERED** that, upon completion of the "special term" of supervised release, the defendant shall be on supervised release for the originally imposed term of 36 months.  The conditions of this term of supervision shall be the same as those set out in the Judgment [Docket No. 399] entered on October 21, 2019.  It is further

**ORDERED** that defendant's Motion for an Order [Docket No. 523] is **DENIED AS MOOT**.

DATED August 17, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge